Mrs. Grace CARRIGAN, Appellant,

v.

CALIFORNIA STATE LEGISLATURE;
Industrial Accident Commission of The
State of California; Zenith National In-
surance Company; and Dr. F. K. Amer-
ongen, Appellees.

No. 16189.

United States Court of Appeals
Ninth Circuit.

Jan. 28, 1959.

Certiorari Denied April 27, 1959.

See 79 S.Ct. 901.

See also 263 F.2d 568.

Grace Carrigan, Sunland, Cal., appellant, in pro. per.

Edmund G. Brown, Atty. Gen., Bonnie Lee Hansen, Deputy Atty. Gen., State of

Cal., for Cal. State Legislature & Industrial Accident Commission.

Hassen & Chernow, Alex S. Chernow, Los Angeles, Cal., for Zenith Ins. Co. Overton, Lyman & Prince, Carl J. Schuck, Lawrence J. Larson, Ried Bridges, Los Angeles, Cal., for Dr. F. K. Amerongen.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

STANLEY N. BARNES, Circuit Judge.

On May 22, 1958, Mrs. Grace Carrigan, in propria persona, filed a complaint in the district court against the defendants named above in the caption.

This complaint was entitled:

"Complaint. An action in equity, because the Workmen's Compensation and Insurance Division of the Labor Code of the State of California, maintained in effect by the State of California, is so inequitable and deficient as to constitute a fraud, maintained in the name of law, against the people of the State of California, in violation of the 14th Amendment to the Constitution of the United States. Said inequitable law is so deficient in protecting and enforcing the property and property rights of injured workmen and their dependents, that said law was the means of depriving plaintiff's injured husband and his dependent, plaintiff, of their property and property rights of full and complete medical care, equitable compensation payments and a settlement to which plaintiff's husband was entitled because of diminished earning capacity,—in violation of the 14th Amendment to the Constitution of the United States. The depriving of said property and property rights of plaintiff's injured husband and his dependent plaintiff, by fraud, and in a fraudulent manner, was possible and was committed under said very deficient and inequitable law, by defendants, in violation of the 14th

Amendment to the Constitution of the United States. An action for United States District Court Order to restore to plaintiff's husband and his dependent, plaintiff, their said property and property rights, and for other equitable relief. For United States District Court Order to declare and to delete certain sections of said law as unconstitutional. For United States District Court Order to incorporate other provisions which will make said law equitable, and effective in protecting and enforcing the property and property rights of injured workmen and their dependents, and therefore make said law equitable and constitutional. And for damages from defendants for said deprivation, and for distress of plaintiff's injured husband and his dependent, plaintiff."

The complaint named only Mrs. Grace Carrigan as plaintiff—in the heading showing appearances of counsel; in the title of the action; in the body of the complaint alleging the jurisdictional facts,[1] and elsewhere throughout the complaint. Mrs. Carrigan signed the complaint as the plaintiff.[2] Below her signature there appears the following:

"Mrs. Carrigan has read to me the part of the complaint about medical care for me, and about the back money coming to me, and about the settlement, and for all benefits for any future disability, and I hereby ask the court for all of these.

Date: May 21, 1958
    (Signed) Milo G. Carrigan."[3]

Most, although not all, subsequent documents, whether prepared by defendants and directed to Mrs. Carrigan or prepared by Mrs. Carrigan and directed to her opponents, refer to but one plaintiff,[4] although the husband adds a note to many, saying he desires Mrs. Carrigan

"to handle the case in Court because I feel she understands the procedure."

The minutes of the district court of July 7th, 1958 and July 14th, 1958 show only that Mrs. Carrigan appears for herself, "in pro. per."

On July 7th, 1958, the district court heard the motion of defendants Dr. Frederick K. Amerongen and Zenith National Insurance Company to dismiss the complaint and informally granted the motion to dismiss.

On July 14th, 1958, the court granted the motion of defendants California State Legislature and Industrial Accident Commission of the State of California to dismiss. This was ordered dismissed *"without prejudice,"* on three grounds:

(1) That plaintiff had not established jurisdiction;

(2) That plaintiff had not complied with Rule 8(a), Fed.R.Civ.P.; and

(3) That plaintiff "cannot appear as attorney for your husband."

Formal orders of dismissal in favor of Dr. Amerongen and Zenith National Insurance Company were entered that same day.

On July 14th, 1958, the day the matter was finally and formally dismissed, Mrs. Carrigan filed below a document entitled: "Application for injunction against California State Legislature and Industrial Accident Commission of the State of California and for immediate payment of all equitable Relief," in which application was made "by plaintiff" for a three-judge court.[5] On July 21, 1958, this application was denied by the district court by minute order.[6]

Thereafter, on August 5th, 1958, plaintiff Mrs. Grace Carrigan *and Milo G. Carrigan* filed an "application to appeal in a special manner to the United States

---

1. "Plaintiff is a citizen of the United States and a resident of the State of California."

2. Complaint, p. 189.

3. Complaint, p. 189.

4. Tr. pp. 212, 225, 247.

5. Tr. p. 281.

6. Tr. p. 311.

Court of Appeals for the Ninth Circuit." [7]

On August 13th, 1958, a document entitled "Notice of Appeal" was filed, Mrs. Carrigan appearing alone as counsel, but stating "Mrs. Grace Carrigan and Milo G. Carrigan are the parties appealing."

On August 13th, 1958, the court below entered the following order:

"It appearing to the Court that plaintiff's time to appeal from the dismissals in this case entered July 14, 1958 will expire this date; that the Clerk is holding a Notice of Appeal submitted by plaintiff without filing fee; and that plaintiff has filed a document entitled 'Application to Appeal in a Special Manner to the United States Court of Appeals for the Ninth Circuit,'

"It Is Ordered that the Clerk file said Notice of Appeal without prepayment of the $5.00 filing fee, but that this direction to the Clerk is not a ruling on plaintiff's application to appeal in a special manner."

On September 5th, 1958, the court below entered the following order:

"It Is Ordered that Plaintiff's Application to Appeal in a Special Manner filed August 5, 1958 in the above-entitled case, be deemed an application to appeal in forma pauperis un-

der Title 28, U.S.Code, Section 1915; and It Is Ordered that Plaintiff is hereby authorized to prosecute her appeal without prepayment of fees and costs or security therefor.

"It Is Further Ordered that insofar as said Application to Appeal in a Special Manner requests permission to appeal on a typewritten record, it is denied for the reason that such application should be properly addressed to the Court of Appeals.

"It Is Ordered that the Clerk shall furnish a copy of this Minute Order to Plaintiff as a reply to the document filed August 12, 1958 by Plaintiff entitled 'To Judge Harry Westover, and/or Judge Ben Harrison: What Has Been Done About Our Above-entitled Document?' "

Thereafter, on September 8th, 1958, there was filed below a document entitled "Second Application to Appeal in A Special Manner to the United States Court of Appeals for the Ninth Circuit to: Judge Harry Westover, or Any Immediately Available Judge."

In addition to the foregoing documents, there are in the Transcript of Record on this appeal some seventy-five pages of correspondence between the Clerk of the court and Mrs. Carrigan. We include in the margin an example of such correspondence, chosen at random, to indicate its character. [8]

---

7. Tr. p. 315.

8. A—Letter of Mrs. Carrigan to Clerk of the District Court:

"Mr. John Childress, Clerk

               August 6, 1958

United States District Court
Federal Building
Los Angeles, California
Dear Mr. Childress:

        Re: 483-58 HW Equity

Application To Appeal In A Special Manner

To The United States Court Of Appeals

For The Ninth Circuit

Will you kindly reply by return mail, giving answers to the following questions, to be obtained from Judge Ben Harrison:

1—On Tuesday, August 5, 1958, were you in the capacity of Acting Chief Judge?

2—On this date, at about 2 p.m., did

Mr. Carrigan and I see you in your office?

3—At that time, were you presented with our document entitled: Application to appeal in a special manner to the United States Court of Appeals for the Ninth Circuit?

4—Did we leave the document with you, with the understanding that you required time to look into it and to talk to the clerk about it?

5—Did you tell us to come back at 3 p. m., on that same day?

6—When we came back to see you at 3 p.m., did you return our document to us and tell us that you had learned that Judge Westover would be in on Friday on a certain naturalization matter?

7—Did you tell us that you declined to act on our matter?

8—Was this because Judge Westover was expected in on Friday, and you preferred

■ As this Court remarked in a recent case, "It is not the function of this Court to supervise laymen in the practice of the law."[9] Pointing out to a determined individual who appears in propria persona that the technicalities of legal procedure are matters few laymen are capable of understanding, and that their path is a perilous one, is a waste of judicial breath. Perhaps the easiest procedure in this case would be to dismiss the entire appeal as frivolous, and strike the briefs and pleadings filed by appellant, Mrs. Carrigan, as either scandalous, impertinent, scurrilous, and/or without relevancy.[10] Undoubtedly such action would be justified by this Court. Were Mrs. Carrigan a licensed attorney, her conduct in this case would subject her to appropriate disciplinary action by both this Court and the lower court.[11] But we do not choose to suggest that course. Mrs. Carrigan, unguided rather than misguided, is entirely honest and consci-

---

to have our matter presented, or held over, for him?

9—Did I tell you our appeal time was running out, and that we could not come down again on Friday, and wanted the matter settled Tuesday, so that we could get action on our case?

10—Did I ask you to give me a written order that you did not wish to consider deciding on our document in view of the fact that Judge Westover would be in on Friday, and it was your wish to have the matter held for him?

11—Did you give us such a written order?

12—Why not?

13—Did you know that Judge Westover was on vacation on August 5, 1958?

14—Is Judge Westover, officially on vacation, required to take care of matters such as ours, while in the building on Friday, on another matter?

15—Did you give us assurance that Judge Westover would act on our matter on Friday, even though he is officially on vacation?

The answers to the above questions, Mr. Childress, you can readily see, are necessary for us to have promptly.

Yours truly,
(Signed)    Mrs. Grace Carrigan
Mrs. Grace Carrigan
10510 Mather Avenue
Sunland, California
Mail: P. O. Box 361
Sunland, California
P. S. Kindly include this letter in 483-58 HW, as other letters have been included."
Tr. pp. 387, 389.

B—Letter, Clerk of the District Court to Mrs. Carrigan:

"Mrs. Grace Carrigan        August 7, 1958
P. O. Box 361
Sunland, California

Re: Mrs. Grace Carrigan vs.
California State Legislature, et al
No. 483-58 HW
Dear Mrs. Carrigan:
We have received your letter to this office dated August 6, 1958, containing various questions which you want answered by the Clerk on the basis of information to be obtained from Judge Ben Harrison. It is not in our province to interrogate Judges, and we consider it improper to make such requests of a Judge.
To save you the trouble of re-writing your letter, we will deliver you (sic) letter to Judge Harrison, not for reply, but merely for his information and such action as he may wish to take.
Yours very truly,
John A. Childress, Clerk."
Tr. p. 390.

9. Springer v. Best, 9 Cir., 264 F.2d 24.

10. Mrs. Carrigan accuses the court below of being "plainly prejudiced against plaintiffs." (Br. p. 36.) She charges him with conducting irregular hearings, and making false statements in the minutes of the hearings (Br. 38–40); she charges him with having no conscience, a flagrant disregard of plaintiffs' rights, irregular proceedings and conducting a "highly unethical court session" (Br. 44–45); she charges the trial judge with a "flagrantly untrue statment" in his minute order and making up a "false story" (Br. 50–52). In the Reply Brief she charges misstatements by appellees' attorneys in their briefs (Reply Br. 2 and 8–9); charges irregularities by the judge and the attorneys (Reply Br. 3); wilful incompleteness and misstatement in the appellees' brief (Reply Br. 4); false statements by appellees (Br. 6); and various charges against Judge Westover including "thwarting" her appeal to this Court, irregularities and improprieties (Reply Br. 13). She also makes many of the same statements in her summary in her brief, at 7–11.

11. Fed.R.Civ.P. 11, 28 U.S.C.

entious in her belief that she is entitled to relief in the particular manner in which she proposes to obtain it. We prefer to attempt to wade through each document before us, carefully and patiently, and, we trust, in a kindly manner, and then follow and apply the law, substantive and procedural, which binds judges, lawyers, and non-lawyers alike.

We have read carefully plaintiff's "Appeal Brief," the "Reply Brief of Appellants" (sic) and, the one hundred eighty-eight page complaint.

Mrs. Carrigan fails to recognize that the issue presented on her appeal to this Court insofar as defendants California State Legislature and Industrial Accident Commission of the State of California are concerned is *not* whether she has expressed or is capable of expressing a meritorious cause of action against them jointly or individually. That is a matter on which we express no opinion one way or another. The sole question before us is whether the lower court was acting within its authority in dismissing her appeal—*without prejudice.*

The lower court gave three reasons for its action:

(1) Failure of plaintiff to show jurisdiction;

(2) Failure of plaintiff to comply with Fed.R.Civ.P. 8(a) (2); and

(3) That Mrs. Carrigan, not being an attorney, cannot represent her husband.

■ If any one of these three reasons justified the lower court's action, we are required to affirm. Food Fair Stores, Inc. v. Food Fair, Inc., 1 Cir., 1949, 177 F.2d 177 (failure to show jurisdiction); Renshaw v. Renshaw, 1946, 80 U.S.App. D.C. 390, 153 F.2d 310 (pleadings not short and concise); Cool v. International Shoe Co., 8 Cir., 1944, 142 F.2d 318 (pleadings not short and concise). Cf. also McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135 (necessity of pleading jurisdiction).

Let us first consider the district court's second reason for dismissing. Rule 8 of the Federal Rules of Civil Procedure, in subsection (a), requires: "(1) *a short and plain statement* of the grounds upon which the court's jurisdiction depends * * * (2) *a short and plain statement* of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment * * *."

Subsection (e) of Rule 8 requires: "(1) each averment of a pleading shall be *simple, concise, and direct.* * * *"

■ On oral argument Mrs. Carrigan urged on this Court that while she had read Rule 8 she was not bound by it because she alleged fraud, and hence Rule 9(b) was controlling.[12] We do not think that one rule "controls" another when they apply to the same subject matter, but that each must be read together. When fraud is alleged, it must be particularized as Rule 9(b) requires, but it still must be as short, plain, simple, concise, and direct, as is reasonable under the circumstances, and as Rules 8(a) and 8(e) require.

■ And who must determine such issue of reasonableness? Surely not the litigants, for if that were the rule, then no restriction would remain. Could any court hold that litigants had failed to comply with such rules, if only the litigants could determine if they were transgressing them? Obviously the determination of whether there has been a reasonable compliance must rest with the

---

12. Rule 9(b) reads in part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

A similar contention was apparently made, unsuccessfully, in Buckley v. Altheimer, D.C.N.D.Ill.1942, 2 F.R.D. 285, 286, where the plaintiff filed a two hundred sixty page complaint replete with evidentiary matter, and other wholly unnecessary material. On motion of the defendants the complaint was stricken as violative of Fed.R.Civ.P. 8(a) (2). The court there saying, "While under Rule 9(b) the circumstances constituting fraud must be stated 'with particularity,' yet when the particulars are stated such particulars must be stated simply, concisely and directly."

trial court. If that were not so, there would be no rule. Such determination must be exercised with discretion, and that discretion cannot be absolute, any more than can the litigant's determination of what is or is not "short, concise, plain, simple, and direct." Such discretion is a judicial discretion, subject to review by this Court if an abuse of such discretion exists. Renshaw v. Renshaw, supra. Cf., Sherman v. Air Reduction Sales Co., 6 Cir., 1958, 251 F.2d 543. See also 1 Barron & Holtzoff, Federal Practice and Procedure § 255, at 488 (1950).

Did the district court abuse its discretion in requiring Mrs. Carrigan, if she desired to proceed, to state her cause of action concisely, plainly, simply, shortly, and directly, which she had not done in her complaint on file?

Mrs. Carrigan alleges her legal theories in the first twenty-seven pages of her complaint, and specifies the relief she demands in the last nine. The intervening one hundred fifty pages tell not only of her husband's injury, his medical treatment, his compensation payments, and Mrs. Carrigan's difficulties and frustrations with doctors, the insurance company, and most everyone else with whom she was in contact; but, as well, her thoughts; her worries; hundreds of hearsay conversations; letters she wrote (some unsigned, unmailed and undelivered); medical reports; her conclusions on many things; self-serving statements; statements made by someone not a defendant, although "plaintiff is not certain who said it"; Mrs. Carrigan's borrowing of money from the bank, and her gratefulness for it; how a church helped her with groceries—"Kept up for several months"—and how grateful she was; how she hated to suggest to her husband that he ride a bus instead of a taxi to an oculist's; the concern of the insurance company for Mr. Carrigan's health, but not Mrs. Carrigan's; what Mrs. Carrigan wanted to add to the Disability Report, but did not; the attitudes taken by the people she had contact with (whether defendants or not); their concern when she would not be intimidated; whether they were angry; what they insinuated; her surprise at their actions; how individual trip by individual trip she had paid taxi fares to take her husband to the doctors; how she had sent the insurance company the receipts for the cost thereof, and how they had reimbursed her therefor; and how nice the taxi dispatcher was that provided the taxis. She included *in haec verba* the letters she wrote to the insurance company on various occasions. For example, on August 13, 1957 when her husband's check did not arrive by 4:00 P.M. on the day it was due, she confirmed her previous telephone call to the insurance company, and requested:

"If check has been mailed, kindly give us the following information: (a) Number of check; (b) Date on check; (c) Date check was mailed; (d) Time check was mailed; (e) By whom check was mailed; (f) Where check was mailed."

As an example of Mrs. Carrigan's Complaint taken at random (and one which could easily have been taken from almost any one of a hundred pages), we quote:

"Dr. Avol was very abrupt in his manner. As I asked anxious questions about Mr. Carrigan's condition and what should be done, and when, he brushed me aside in an evasive manner, so that I was more worried than before. Later, when I walked down the hall, I found Dr. Gering at the ward desk, and he was just as unresponsive and abrupt. I do not remember which doctor said it, but one of them said that they came to the hospital to see Mr. Carrigan and not me. Both doctors acted as if I was an intruder in a situation where I did not belong. And they acted like men who had something up their sleeves, and I definitely did not trust either of them. After they left, I stayed in the hall a long time, watching near Mr. Carrigan's ward. I asked a nurse if anyone had called the doctors at that time of night for

Mr. Carrigan, as an emergency. I was told no. Part of the time the rest of that night I sat by Mr. Carrigan's bedside, and some of the time, out in the hall near his ward, or out in the waiting room. That first contact at the hospital with Dr. Gering and Dr. Avol left me without sufficient information from either of them as to Mr. Carrigan's condition. But I had no money to work with to try to handle the situation any other way than by the insurance company."

■ We hold that the district court did not abuse its discretion in dismissing *without prejudice* a complaint which did not contain allegations coming within the requirements of the Federal Rules of Civil Procedure.

■ Thus there is no reason to reach or consider the other reasons recited in the order of dismissal as to the California State Legislature and the Industrial Accident Commission entered by the district court. We point out, however, that with respect to Mrs. Carrigan's failure to include her husband specifically as a plaintiff, until after an order of dismissal had been entered against her in the lower court, she specifically violated Rule 10, Fed.R.Civ.P. That rule, in subsection (a), states: *"In the complaint the title of the action shall include the names of all the parties, * * *."* (Emphasis added.)

■■ We likewise point out that the claim that Mrs. Carrigan seeks to enforce against the California State Legislature and the Industrial Accident Commission is her husband's. He was the person physically injured. If he has a right to recover for his industrial injury, it arises under the Workmen's Compensation Act of the State of California (California Labor Code, Div. 4). That right is statutory, not a right existing at common law, and is an exclusive remedy. Peterson v. Moran, 1952, 111 Cal.App.2d 766, 245 P.2d 540. Mr. Carrigan must seek his remedy before the Industrial Accident Commission of the State of California.

Workmen's Compensation Acts, generally, have been declared constitutional. Alaska Packers' Ass'n v. Industrial Acc. Comm., 1935, 1 Cal.2d 250, 34 P.2d 716, affirmed 294 U.S. 532, 55 S.Ct. 518, 79 L. Ed. 1044. And see the general discussion of the constitutionality of Workmen's Compensation Acts, 99 C.J.S. Workmen's Compensation § 19 (1958), which cites hundreds of cases on the point. Likewise, California's Workmen's Compensation Act has been upheld. Alaska Packers' Ass'n v. Industrial Acc. Comm., supra; Miller & Lux, Inc. v. Industrial Acc. Comm., 1919, 179 Cal. 764, 178 P. 960, 7 A.L.R. 1291; Western Indem. Co. v. Industrial Acc. Comm., 1917, 174 Cal. 315, 163 P. 60.

■ Nowhere in the complaint is it alleged that the Workmen's Compensation Act is applicable to Mrs. Carrigan. She has suffered as a wife, if her husband was injured, but that does not mean she has suffered a legal detriment. There can be no justiciable controversy where the person suing has suffered no legal detriment, and the action is merely to determine the constitutional validity of legislation. Premier-Pabst Sales Co. v. Grosscup, 1936, 298 U.S. 226, 56 S.Ct. 754, 80 L.Ed. 1155; Muskrat v. United States, 1911, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246; Dallas Joint Stock Land Bank v. Davis, 5 Cir., 1936, 83 F.2d 322, 323.

The motion to dismiss filed by Dr. Amerongen was upon the grounds that the complaint fails to state a claim upon which relief can be granted to plaintiff. Mrs. Carrigan attacks the Workmen's Compensation Act as inequitable and avers that Dr. Amerongen acted under its provisions, or as she states, "functioned under said law." She demands damages from him for having been a party to an alleged fraudulent scheme to terminate her husband's benefits and rights under the California Workmen's Compensation Act.

■ There is no allegation that the defendant Doctor had anything to do with the *administration* of the Workmen's Compensation Act. The complaint

indicates that the Doctor examined plaintiff's husband and made medical recommendations for his treatment. It is not urged that such treatment was improper in any way. No violation of any duty existing on the part of Dr. Amerongen to plaintiff is charged. We agree that no cause of action was stated against Dr. Amerongen, within the boundaries of the rules of court hereinabove discussed.

 The Zenith National Insurance Company in its motion to dismiss raised the point that the California Workmen's Compensation Act provides the exclusive remedy for an injured person against an insured employer, and that said injured employee may not maintain an action for the alleged tort in any other tribunal. This is a correct statement of the law. California Labor Code, § 3601.

The insurance company also raised the incapacity of the wife to sue for her husband's injuries, or to represent him in any cause of action he might have, and the lack of jurisdiction in the federal courts to determine any disputes between an injured employee and the insurance carrier for the employer.

 The dismissal as to the insurance company for lack of jurisdiction was proper.

Although not named as a defendant, Mr. S. W. McDonald, Chairman of the Industrial Accident Commission of the State of California is named in the complaint, and special damages of $20,000 are prayed against him because he wrote Mrs. Carrigan a letter dated January 8, 1958, the last sentence of the last paragraph of which reads as follows:

"I regret I am unable to be of further assistance to you, and trust that your husband's health will improve as much as possible."

 This, says appellant, was a cruel, inhuman and mocking sentence. Without passing on the authenticity of appellant's contention, it is obvious that damages cannot be recovered from a person not named as a defendant. Any such purported claim was properly dismissed.

 There remains only the point as to whether the district court can dismiss a complaint when a three-judge court is requested by a litigant. Here appellant requested the three-judge court *after* at least part of her action had been dismissed. We refer to the case of Carrigan v. Sunland-Tujunga Tel. Co., 9 Cir., 263 F.2d 568, and we incorporate by reference that portion of it having reference to the same legal problem herein raised. The district court does have power to dismiss without convening a three-judge court.

The action of the district court is affirmed.