323 F.2d 219
 William C. ROBERTS and John Strunk, Appellants,
v.
LEHIGH AND NEW ENGLAND RAILWAY COMPANY and Lodge 713,
Brotherhood of Locomotive Firemen and Enginemen,
Lodge 734, Brotherhood of Railroad
Trainmen, Lodge 619, Order of
Railway Conductors
and Brakemen.
 No. 14303.
 United States Court of Appeals Third Circuit.
 Argued April 23, 1963.
Decided Oct. 2, 1963.
 
 Lawrence J. Richette, Philadelphia, Pa., for appellants.
 Miles W. Kirkpatrick, Philadelphia, Pa. (E. Jackson Bonney, Philadelphia, Pa., Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for Lehigh and New England Ry. Co.
 Cornelius C. O'Brien, Jr., Philadelphia, Pa., for Lodge 734, Brotherhood of RR Trainmen.
 Robert W. Sayre, Philadelphia Pa., for Lodge 713, Brotherhood of Locomotive Firemen and Enginemen and Lodge 619, Order of Railway Conductors and Brakemen.
 Before BIGGS, Chief Judge, and HASTIE and GANEY, Circuit Judges.
 GANEY, Circuit Judge.
 
 
 1
 This is an appeal from the allowance of motions to dismiss[1] the complaint in favor of the Lehigh and New England Railway Company ('Railway'), and three local lodges of railroad employee unions. Plaintiffs-appellants are former employees of the Railway and former members of one of the three local lodges.
 
 
 2
 The two plaintiffs were involuntarily retired on June 30, 1962, pursuant to the terms of three memorandum agreements entered into by the Railway and the three local lodges in January of 1962, They sued on behalf of themselves and others similarly affected by defendants' actions. From the complaint and its supporting papers filed on July 11, 1962, we obtained the following information: In May of 1936, all of the defendants entered into the Washington Job Protection Agreement. A pertinent provision of that agreement called for severance pay based on years of service if an employee of a railroad is deprived of his employment by reason of the abolishment of his position as a result of the 'coordination' of railroad facilities. Prior to the filing of the complaint and for many years before, there existed a collective bargaining agreement between the Railway's predecessor and the three defendant local lodges concerning 'rates of pay, rules and working conditions'.[2] Grievances or claims by an employee against the Railway were to be processed by the local lodge of which he was a member.
 
 
 3
 In April of 1960, the Railway acquired a railroad company which operated 179 miles of track in the Eastern District of Pennsylvania. The Railway obtained the approval of the Interstate Commerce Commission to abandon 77% Or 138 miles of the trackage. In seeking permission the Railway informed the Commission that such abandonment would entail severing the employment of approximately 110 men. The Railway, in the early spring of 1960, approached the three local lodges with the proposal of revising the collective bargaining agreement so that when an employee reached age 65 he would be required to retire without severance pay. By referendum ballot, a majority of the members of the local lodges rejected the proposal. Thereafter, in November of 1961, the Railway severed the employment relationship of 30 men who were at that time over 66 years of age and paid them severance compensation in accordance with the Washington Job Protection Agreement. Immediately thereafter, the three local lodges once more presented the Railway's proposal of involuntary retirement for all employees upon their reaching 65 years of age. By ballot a majority of the employees signified their approval of the proposal. In January of 1962, each of the three local lodges entered into a memorandum agreement with the Railway. All three of the agreements contained the following provisions: The parties have agreed that all employees coming within the scope of the agreement 'who have attained the age of 65, or who shall attain that age before July 1, 1962, shall be retired and their names removed from the seniority roster on June 30, 1962.
 
 
 4
 'Employees who shall attain the age of sixty-five after June 30, 1962, shall be required to retire, and their names will be removed from the seniority roster.
 
 
 5
 'Neither this agreement, nor any provision contained herein, shall be used as a basis for time or money claims against the Carrier. Disputes involved in the application of this agreement shall be disposed of by the officer of the Railway designated to handle such disputes and the General Chairman.
 
 
 6
 'This agreement * * * shall cancel and supersede all previous agreements in conflict therewith * * *.'
 
 
 7
 On June 30, 1962, the plaintiffs and ten other employees of the Railway, who were also members in good standing of one of the three local lodges, were involuntarily retired from their employment, without being paid severance compensation, and their names were removed from the seniority rosters of the Railway. Up until the time they were retired, plaintiffs held seniority rights under the collective bargaining agreement. The twenty-second paragraph of the complaint avers as follows: 'The defendant labor organizations have in fact refused to recognize the claims of the plaintiffs who have protested that the January * * * 1962 agreement is an illegal and void collective bargain; and since the execution of that agreement, have refused to process any claim or appeal internally within their labor organizations or against the defendant carrier. Thus the employees have complied with the respective constitutions of the labor organization defendants with respect to internal appeals.' However, there is no allegation in the complaint that the plaintiffs or the other ten men have attempted to present their claims to the appropriate division of the National Railroad Adjustment Board.
 
 
 8
 By way of relief the plaintiff sought (1) A declaration that the January 1962 memorandum agreements are void, (2) Reinstatement of all employees discharged under the agreements to the seniority rosters of the Railway, (3) Payment of lost wages resulting from the discharge, and (4) Punitive damages equal to the severance pay which would have been paid each of the discharged employees had the Washington Job Protection Agreement not been nullified by the defendants. The prayer for relief does not ask that the three local lodges be compelled to present the complaints of the people involved to the appropriate division of the National Railroad Adjustment Board.
 
 
 9
 Plaintiffs contend that the January 1962 agreements are invalid and unenforceable for three reasons. The first is that an involuntary retirement provision in a collective bargaining agreement is contrary to The Railway Labor Act, 45 U.S.C.A. 151 et seq. A Federal district court has jurisdiction to determine the validity of a contract under the guarantees of the Act. On the other hand, if the resolution of the differences between railroad employees, on one side, and the railroad and the unions, on the other, depends on the interpretation of disputed terms of the collective bargaining agreement, then the dispute must be sent to the National Railroad Adjustment Board, which has exclusive primary jurisdiction to make the interpretation. Slocum v. Delaware, L. & W.R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Gainey v. Brotherhood of Railway, etc., Clerks, 275 F.2d 342 (C.A.3, 1960); cert. denied, 363 U.S. 811, 80 S.Ct. 1248, 4 L.Ed.2d 1153; Haley v. Childers, 314 F.2d 610 (C.A.8, 1963). Getting back to plaintiffs' first reason, in the case of Terminal Railroad Association of St. Louis v. Brotherhood, etc., Trainmen, 318 U.S. 1, at page 6 of its opinion, 63 S.Ct. 420, at page 423, 87 L.Ed. 571 (1943), the Supreme Court said: 'The Act does not fix and does not authorize anyone to fix generally applicable standards for working conditions.' And on the same page, 'Instead it seeks to provide a means by which agreement may be reached with respect to them.' These words were quoted with approval in Brotherhood of Locomotive Engineers v. Baltimore & O.R. Co., 372 U.S. 284, 289-290, 83 S.Ct. 691, 9 L.Ed.2d 759 (1963). Hence on its face an involuntary retirement provision in a collective bargaining agreement does not violate the Act. See McMullans v. Kansas, Oklahoma & Gulf Ry., 229 F.2d 50 (C.A.10, 1956), cert. denied, 351 U.S. 918, 76 S.Ct. 710, 100 L.Ed. 1450; Goodin v. Clinchfield R. Co., 125 F.Supp. 441 (E.D.Tenn.1954), aff'd 229 F.2d 578 (C.A.6, 1956), cert. denied, 351 U.S. 953, 76 S.Ct. 850, 100 L.Ed. 1476. Yet a provision in a collective bargaining agreement which is valid on its face may be held invalid in its application because of hostile discrimination on the part of the railroad or the statutory collective bargaining representative. See Gainey v. Brotherhood of Railway & Steamship Clerks, 313 F.2d 318 (C.A.3, 1963). However, the allegations in the complaint do not set forth any facts from which hostile discrimination on the part of defendants would be a permissible inference. There is no assertion that the provision was agreed upon by the Railway for the purpose of weakening one lodge in preference to another, or that it was accepted by the three lodges by reason of fraud or coercion or in 'bad faith and ill will'. Each lodge consented to the inclusion of the provision in the agreement only after a majority of its members voted in favor of it. The fact that the provision may favor younger workers who outnumber older ones with greater seniority rights is not a basis for a claim of hostile discrimination. See Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953) and Steele v. Louisville & N.R. Co., 323 U.S. 192, 203, 65 S.Ct. 226, 89 L.Ed. 173 (1944).
 
 
 10
 The second reason given by plaintiffs is that the memorandum agreements circumvented certain provisions of the Washington Job Protection Agreement. This claimed reason is, of course, based on plaintiffs' interpretation of the agreements in question. Even if we assume that they are right in their interpretation, the Act does not make the memorandum agreements invalid for the reason. The bargaining representative, within the limits of its constitution and By-laws,[3] may agree to a change in the by-laws,[3] may agree to a change in the provided such change does not violate the Act. McMullans v. Kansas, Oklahoma and Gulf Ry., supra, 229 F.2d at p. 56.
 
 
 11
 The third reason given by the plaintiffs for contending that the 1962 memorandum agreements are invalid is that the provision stating: 'Neither this agreement, nor any provision contained herein, shall be used as a basis for time or money claims against the Carrier,' Obliterated their rights to file claims with the local lodges or the Railway. Here again whether it does so is their interpretation of the 1962 agreements. The provision in question does not expressly prevent employees of the Railway from using the grievance procedure for objecting either to the inclusion of an involuntary retirement provision in the collective bargaining agreement or to their being retired under that provision. Whether it does by implication is not for the courts to decide. Furthermore, as the District Court pointed out, the main relief sought by the plaintiffs on behalf of themselves and others is reinstatement with back pay.[4] They have not chosen to accept the Railway's action in discharging them as final, thereby agreeing that they are no longer employees of the Railway.[5] They do not concede that the Railway had the right to retire them even though it paid them the proper amount of severance compensation. They argue that other employees with less seniority than they should have been furloughed instead. They do not ask for severance pay as such but are attempting to recover by way of punitive damages an amount equal to the total of the sums which would be paid them if they were considered as being deprived of their employment under the Washington Job Protection Agreement.
 
 
 12
 Accordingly, since the complaint does not set forth a claim upon which relief can be granted by the District Court, the judgment of that court will be affirmed.
 
 
 
 [1]
 The opinion of the District Court may be found at 211 F.Supp. 379 (E.D.Pa.1962)
 
 
 [2]
 No copy of this agreement was attached to the complaint
 
 
 [3]
 Neither copies of the constitutions of the Unions of which the local lodges are members or the by-laws of the locals have been attached to the complaint
 
 
 [4]
 This was precisely the relief sought in Haley v. Childers, 314 F.2d 610, 615 (C.A.8, 1963)
 
 
 [5]
 A discharged railroad employee may challenge the validity of his discharge before the National Railroad Adjustment Board and seek reinstatement and back-pay, or he may choose to accept the railroad's action in discharging him as final, and bring a civil action against the railroad for breach of contract. Slocum v. Delaware, L. & W.R. Co., 339 U.S. 239, 244, 70 S.Ct. 577, 94 L.Ed. 795 (1950). Also see Moore v. Illinois Central R. Co., 312 U.S. 630, 634, 61 S.Ct. 754, 85 L.Ed. 1089 (1941)