368 F.Supp. 990 (1973)
Moses RUFFIN, Individually and on behalf of others
v.
DIVISION THREE, NATIONAL RAILROAD ADJUSTMENT BOARD
and
Brotherhood of Railway & Airline Clerks, Philadelphia
and
The Penn Central Transportation Company, Philadelphia.
Civ. A. No. 72-790.
United States District Court, E. D. Pennsylvania.
October 26, 1973.
*991 Lawrence J. Richette, Philadelphia, Pa., for plaintiff.
Allen S. Olmsted, II, Philadelphia, Pa., for Brotherhood of Railway Clerks.
Richard N. Clattenburg, Philadelphia, Pa., for Penn Central Transp. Co.
Carl J. Melone, Philadelphia, Pa., for National R. R. Adjustment Bd.

MEMORANDUM OPINION AND ORDER
BRODERICK, District Judge.
Plaintiffs represent a class of some 600 tallymen, loaders and truckers who are seeking to have the Court enter an order directing the National Railroad Adjustment Board (NRAB) appoint a Referee to resolve grievances which plaintiffs may wish to present. Plaintiffs also seek to have the Court enjoin the defendants, Penn Central Transportation Company (Railroad) and Brotherhood of Railway and Airline Clerks, from participating in the selection of the Referee. Plaintiffs further pray for an award of fees and costs for their attorney. Defendants have moved to dismiss and alternatively for summary judgment.
The history of this dispute extends in excess of twenty years and the facts and allegations have been well canvassed in the prior decisions[1] and briefs in this matter. The material allegations of the present complaint may be summarized as follows: Plaintiffs at all relevant times were tallymen, loaders and truckers employed by the Railroad at the Philadelphia Transfer (Freight Station) in the old Philadelphia Terminal Division of the Railroad. Plaintiffs were also represented by the Brotherhood in negotiations with the Railroad. On July 24, 1941, the Railroad and the Brotherhood entered into an agreement with respect to pay for the plaintiffs. The agreement guaranteed hourly rates of pay plus bonuses, i. e., "tonnage rates," for excess freight handled above a certain minimum. This particular "tonnage" agreement was applicable only to those employed at the Philadelphia Transfer. Other tallymen, loaders and truckers in *992 the Railroad's Eastern Region were paid flat hourly rates, without tonnage bonuses, which rates constituted approximately $25-$30 per month less than that paid their counterparts in the Railroad's Central Region who were likewise not eligible for the tonnage bonuses. This geographical differential in pay was the subject of a dispute. The workers in Philadelphia Transfer were unsatisfied with the tonnage arrangement as well as with the lack of benefits to which employees in the Central Region were entitled. In response, the Brotherhood filed with the Railroad a formal notice under Section 6 of the Railway Labor Act, 45 U.S.C. § 156, indicating a desire to change the "tonnage" agreement of July 24, 1941. Negotiations between the Brotherhood and the Railroad ensued, and it has been claimed by plaintiffs in prior suits that pursuant to these negotiations an "agreement" was entered into in April of 1950 removing the pay differential. This "agreement" was said to have constituted a binding collective bargaining agreement eliminating certain tonnage rates and equalizing wages throughout the entire Eastern Region on a scale with that of the Central Region. Despite the alleged "agreement" it has been claimed consistently that pay rates were never equalized. Instead, plaintiffs claim that without formally abrogating the "tonnage" agreement and formally entering into the new April 1950 pay equalization agreement, the Railroad, without notice, closed the Philadelphia Transfer on June 29, 1952. Plaintiffs allege that closing the station and sending the station employees to other freight stations where the "tonnage" agreement was inapplicable constituted a unilateral, hence unlawful, termination of the "tonnage" agreement.
This is the fifth in a series of cases, commenced by the same class of plaintiffs and arising out of the same operative facts, in which there has been variously questioned the alleged 1950 wage equalization agreement and the Brotherhood's alleged breach of its duty to fairly represent plaintiffs, as required by the Railway Labor Act, 45 U. S.C. § 151 et seq.
The first case (Gainey I) was instituted in 1959. Gainey v. Brotherhood of Railway and Steamship Clerks, 177 F. Supp. 421 (E.D.Pa.1959), aff'd 275 F.2d 342 (3d Cir. 1960), cert. denied, 363 U. S. 811, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960). Members of this class of plaintiffs charged that the Railroad terminated the "tonnage" agreement eliminating bonus payments and failed to put into effect the new "equalization of pay agreement." Plaintiffs also charged the Brotherhoood with failing to take steps to compel the Railroad to abide by the new agreement. The failure to act was allegedly because the Railroad "could control union officers at will." Plaintiffs sought: (1) a mandatory injunction to compel the Railroad to equalize wages in its Eastern and Central Regions; (2) damages against the Railroad for loss of earnings; (3) punitive damages against the Brotherhood for breach of a duty owed the plaintiffs; and (4) a return of dues collected by the Brotherhood during the critical period. It was held by our District Court that the letter which plaintiffs alleged constituted the wage equalization contract revealed itself only "as a mere offer or, possibly, a counter offer." 177 F.Supp. at 428. Looking at the contract claim on appeal, Circuit Court Judge Goodrich affirmed the District Court's dismissal adding with regard to the "tonnage" agreement:
If the plaintiffs claim that the provisions of the earlier agreement have not been lived up to, they may make their claims to the Railroad Adjustment Board, assuming that the claims would still be timely. Individual claimants may present their claims to the board. 275 F.2d at 345.
More significantly, however, the District Court in Gainey I held that agreement or no, the Supreme Court of the United States had gone to some pains to make clear that the remedies under the Railway Labor Act are exclusive. The Act itself is designed to settle disputes *993 or grievances arising out of the interpretation or application of agreements concerning rates of pay. Slocum v. Delaware, L. & W. R. Company, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Pennsylvania R. R. Company v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959); Union Pacific R. R. Company v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L. Ed.2d 1460 (1959).
In answer to the plaintiffs' complaint in Gainey I that the Brotherhood should have entered into a pay equalization agreement and, hence, breached its duty in failing to do so, the Circuit Court affirmed the dismissal of the complaint against the Brotherhood because the plaintiffs failed to plead exhaustion of remedies within the Brotherhood itself.
In 1960 members of this same class filed a suit (Gainey II) once again pleading the existence of the so-called "equalization of pay agreement." Gainey v. Brotherhood of Railway and Steamship Clerks, 199 F.Supp. 477 (E. D.Pa.1961), aff'd 313 F.2d 318 (3d Cir. 1963). By way of relief, plaintiffs asked for (1) damages against the Railroad for losses in salary, and other benefits; (2) a mandatory injunction compelling the Railroad and the Brotherhood to "execute" an equalization of pay agreement; and (3) punitive damages against the Brotherhood and return of dues. Circuit Court Judge McLaughlin, in affirming the District Court's dismissal, held that the plaintiffs found their cause of action against the Railroad in the same so-called contract that was previously held never to have been consummated. In such a situation, the Circuit Court held, elementary principles of res judicata would bar this suit and that the plaintiffs' remedy lies with the NRAB. With regard to the plaintiffs' complaint against the Brotherhood, the Circuit Court affirmed the dismissal of the complaint for failure to plead "hostile discrimination" by the union, the plaintiffs having cured the defect found in Gainey I of failure to plead and demonstrate exhaustion of union remedies.
The third suit (Gainey III) was instituted in February 1963. Gainey v. Brotherhood of Railway and Steamship Clerks, 275 F.Supp. 292 (E.D.Pa.1967), aff'd 406 F.2d 744 (3d Cir. 1968). Prior to trial a motion was granted staying proceedings against the Railroad until its costs in Gainey I and II had been paid by plaintiffs. Gainey v. Brotherhood of Railway and Steamship Clerks, 34 F.R.D. 8 (E.D.Pa.1963). Plaintiffs failing to pay the Railroad, suit thereafter proceeded against the Brotherhood alone (once again by members of the same class) for damages for breach of the duty of fair representation under 45 U.S.C. § 151 et seq. Plaintiffs specifically charged the Brotherhood with discrimination for failing to enforce a wage equalization agreement; for failing to seek an injunction when the Railroad terminated the 1941 "tonnage" agreement; and for permitting the Railroad to close Philadelphia Transfer in June of 1952, thereby terminating the "tonnage" agreement. Our District Court, affirmed by the Third Circuit, held that the Brotherhood did not act in bad faith and was not guilty of "hostile discrimination" in failing to obtain Central Region rates of pay for Eastern Region tallymen, or in failing to seek injunctive or other relief provided by the Railway Labor Act under the circumstances of the closing of the Philadelphia Transfer Freight Station. Having found an absence of hostile discrimination in the Brotherhood's dealings with and representation of the plaintiffs, the District Court refused to hold that the Brotherhood breached its duty of fair representation, thus finding no violation of the Railway Labor Act.
On May 18, 1967, members of the same class commenced still another action (Ruffin I). Ruffin v. Brotherhood of Railway and Steamship Clerks, 314 F.Supp. 1365 (E.D.Pa.1970). Plaintiffs sought a mandatory injunction to compel defendant union to create a Special Adjustment Board pursuant to the Railway Labor Act, 45 U.S.C. § 153. It was apparently *994 plaintiffs' intention to present the Special Adjustment Board with wage claims arising from the alleged 1950 wage equalization agreement. Judge Higginbotham, upon a review of the three Gainey cases, found that the plaintiffs were barred by collateral estoppel from relitigating the wage claim under the wage equalization agreement, and were similarly barred from relitigating the issue of the Brotherhood's refusal to process plaintiffs' grievances.
In this, the fifth case, plaintiffs ask this Court to order the NRAB to appoint a Referee for the purpose of hearing plaintiffs' grievances and to order the Railroad and the Brotherhood to refrain from participating in the selection of the Referee. To be sure, the plaintiffs could not be asking this Court to adjudicate the merits of the alleged termination of the "tonnage" agreement, or the alleged existence of the wage equalization agreement, or the Brotherhood's alleged unlawful refusal to process plaintiffs' grievances regarding the two contracts. Res judicata effect of the prior determination of these questions precludes their readjudication. Gainey I and II and Ruffin I have laid to rest any claim against the Railroad for its failure to comply with the alleged wage equalization agreement. There is also no question that res judicata effect must be given to the determination in Gainey III that the Brotherhood did not breach its duty to fairly represent plaintiffs in failing to process complaints regarding the alleged breaches of the contracts. These matters being settled, the question arises, what claims can the plaintiffs present to a Referee?
With regard to the Brotherhood, plaintiffs are precluded from presenting the NRAB or an appointed Referee any question as to whether the Union has breached its duty to fairly represent plaintiffs. This would clearly be the same cause of action as that relied on in Gainey III and Ruffin I, even though plaintiffs are asking for a different remedy and there are nominally different plaintiffs.[2]Res judicata makes conclusive a final, valid judgment; and if the judgment is on the merits, precludes further litigation on the same cause of action by the parties or their privies. Antonioli v. Lehigh Coal & Navigation Co., 451 F.2d 1171, 1176 (3d Cir. 1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972).
Plaintiffs contend that the matter which they seek to present to a Referee, i. e., the alleged wrongful termination of the "tonnage" agreement, is one which no tribunal has passed on other than to say jurisdiction over the dispute lies in the NRAB. Although the merit of the *995 dispute as to the breach of the "tonnage" agreement has not been decided by a federal court, this dispute nonetheless remains exclusively within the cognizance of the NRAB, and a federal court has no jurisdiction in the matter.[3]
Plaintiffs, however, note repeatedly that Steele v. Louisville & Nashville R. R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), and Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944) require Court action, since in a dispute between railroad employees on one side and the railroad and the union on the other side, due process cannot be obtained by proceeding against them before the NRAB. Moreover, plaintiffs declare that the Third Circuit has "reversed" the Supreme Court by requiring plaintiffs to proceed before the NRAB in their dispute. (Complaint ¶ 12; Plaintiffs' Brief Contra Railroad's Motion to Dismiss, pt. II(a); Plaintiffs' Brief Contra Brotherhood's Motion to Dismiss 3-4).
The Court finds plaintiffs' reliance on Steele inapplicable in this instance. In Steele, plaintiffs' complaint was against the union for unfair representation and against the employer railroad who was said to have conspired with the union in the union's discrimination. In the instant case, plaintiffs' dispute is with the Railroad only for breach of the "tonnage" agreement. As discussed above, the issue of the Brotherhood's discrimination has been decided by the courts and thus is not cognizable by the NRAB. Of course, as pointed out by Judge Goodrich in Gainey I, supra p. 992, "If the plaintiffs claim that the provisions of the earlier ["tonnage"] agreement have not been lived up to, they may make their claims to the Railroad Adjustment Board, assuming that the claims would still be timely."
Plaintiffs cite two other cases for the proposition that the Court has power to issue a mandatory injunction to compel the NRAB to take a case which only it may hear and decide. Brotherhood of Railroad Trainmen v. Swan, 214 F.2d 56 (7th Cir. 1954) and System Federation, No. 30, Railroad Employes' Dep't v. Braidwood, 284 F. Supp. 611 (N.D.Ill.1968). Indeed, if the NRAB refused to decide issues properly presented to it, which refusal would extinguish a petitioner's due process rights and constitute a failure by the NRAB to fulfill its duties under the Railway Labor Act, the Court may doubtless compel the Board to effect a final disposition of grievances. Plaintiffs' complaint, however, is manifestly different. They apparently do not wish to present their claims to the NRAB. Instead, they ask this Court to order the defendants to by-pass mandated statutory procedures[4] and appoint a Referee and restrain defendants from participating in the selection. Plaintiffs claim that to allow the course of statutory procedure will cause plaintiffs deprivation of due process. They contend that inasmuch as the NRAB is comprised mainly of representatives of railroads and unions, as workers complaining about the Railroad, their former employer, and the union, they would not obtain a fair hearing. They fear that if they independently present their grievances to the NRAB without the guiding hand of the Court, they will not receive due process. A Referee, if appointed by the Court, would be presented with the issue, if still timely, of the termination of the "tonnage" agreement. Although this issue has not heretofore been meritoriously disposed of, this Court is not convinced that the plaintiffs would necessarily be denied their right to due process by being required to follow statutory procedures and present such matter to the NRAB. This action is brought prior to any application made to the NRAB and prior to any decision or refusal to decide by said Board. This *996 Court has not been presented with any legal or equitable basis upon which it could order a circumvention of procedures mandated by statute based upon plaintiffs' speculation of constitutional deprivations unsupported by any evidence of impropriety by the NRAB.[5]
On the view expressed above, it is not necessary to discuss the parties' points regarding the statute of limitations, laches and attorneys' fees.
Accordingly the following Order is entered:

ORDER
And now, this 26th day of October 1973, it is ordered that the motion of plaintiff, Moses Ruffin, for summary judgment is denied; the motion of defendant, Brotherhood of Railway and Airline Clerks, for dismissal is granted; the motion of defendant, Penn Central Transportation Company, for dismissal is granted.
NOTES
[1] Gainey v. Brotherhood of Railway and Steamship Clerks, 177 F.Supp. 421 (E.D. Pa.1959), aff'd 275 F.2d 342 (3d Cir. 1960), cert. denied, 363 U.S. 811, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960); Gainey v. Brotherhood of Railway and Steamship Clerks, 199 F. Supp. 477 (E.D.Pa.1961), aff'd 313 F.2d 318 (3d Cir. 1963); Gainey v. Brotherhood of Railway and Steamship Clerks, 275 F.Supp. 292 (E.D.Pa.1967), aff'd 406 F.2d 744 (3d Cir. 1968); Ruffin v. Brotherhood of Railway and Steamship Clerks, 314 F.Supp. 1365 (E.D.Pa.1970).
[2] In a situation similar to this case, a series of suits was brought under which employees of several railroads sought the aid of the federal courts in declaring a 1962 collective bargaining agreement invalid. Roberts v. Lehigh and New England Ry. Co., 323 F.2d 219 (3d Cir. 1963); Clemens v. Central R. R. Co. of New Jersey, 399 F.2d 825 (3d Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969); Antonioli v. Lehigh Coal & Navigation Co., 451 F.2d 1171 (3d Cir. 1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972); Roberts v. Lehigh Coal and Navigation Co., Civil No. 72-789 (E.D.Pa., filed October 23, 1973). In these cases the plaintiffs variously sought different remedies and interposed different named plaintiffs who were nonetheless members of the same class. Despite this, the plaintiffs' sole endeavor was to have the 1962 contract declared invalid. In Roberts I the contract was upheld as valid. Res judicata effect was given this judgment in Clemens despite the different named plaintiff and the different remedy sought. Similarly, in Antonioli and Roberts II, decided by this Court, res judicata effect was given to the prior judgment. Roberts II is particularly related to the present case for there, as here, plaintiffs sought the appointment of a Referee by the NRAB to adjudicate a matter which had been decided three times previously. This Court thus felt bound by res judicata and dismissed plaintiffs' complaint. In the instant case, plaintiffs seek the appointment of a Referee who may be presented with a matter heretofore decided, i. e., the alleged breach by the Brotherhood of its duty to fairly represent plaintiffs. This matter having been decided, this Court, as it felt in Roberts II, feels such action by plaintiffs is barred by the principles of res judicata.
[3] See p. 992 supra.
[4] Paras. (h)-(p), Section 3, First of the Railway Labor Act, 45 U.S.C. § 153 (h)-(p) (1970).
[5] In addition to the averments in the plaintiffs' complaint, their briefs are replete with charges and innuendo of fraud and collusion. Here, however, we are bound to consider only the complaint, exhibits and amendments, plus affidavits and exhibits as to matters inherent in the averments properly stated in the complaint. Fagan v. Pennsylvania R. R. Co., 173 F.Supp. 465, 469 (M.D.Pa.1959). Acts of fraud not particularized in the complaint cannot be considered. Carrigan v. California State Legislature, 263 F.2d 560 (9th Cir. 1959), cert. denied, 359 U.S. 980, 79 S.Ct. 901, 3 L.Ed.2d 929 (1959).