William C. **ROBERTS**
and
John Strunk, Individually and on behalf of others adversely affected,

v.

LEHIGH & NEW ENGLAND RAILWAY COMPANY
and
Lodge 713, Brotherhood of Locomotive Firemen & Enginemen; Lodge 734, Brotherhood of Railroad Trainmen; Lodge 619, Order of Railway Conductors & Brakemen.

Civ. A. No. 31715.

United States District Court
E. D. Pennsylvania.

Dec. 7, 1962.

Lawrence J. Richette, Philadelphia, Pa., for plaintiffs.

Miles W. Kirkpatrick, E. Jackson Bonney, Philadelphia, Pa., for defendant Lehigh & N. E. Ry. Co.

Robert W. Sayre, Philadelphia, Pa., for defendants Lodge 713, Brotherhood of Locomotive Firemen & Enginemen and Lodge 619, Order of Railway Conductors & Brakemen.

Cornelius C. O'Brien, Jr., Philadelphia, Pa., for defendant Lodge 734, Brotherhood of RR. Trainmen.

CLARY, Chief Judge.

This case is before the Court on motions by all four defendants to dismiss plaintiffs' complaint.

Plaintiffs, who bring this action on behalf of themselves and others adversely affected, are former employees of defendant, Lehigh & New England Railway Company, and its predecessor, Lehigh & New England Railroad Company, and former members of the three defendant Brotherhoods: Lodge 713, Brotherhood of Locomotive Firemen & Enginemen; Lodge 734, Brotherhood of Railroad Trainmen; and Lodge 619, Order of Railway Conductors & Brakemen.

Plaintiffs' complaint arises out of the termination of their employment and their removal from the seniority rosters of the Lehigh Railway on June 30, 1962 pursuant to collective bargaining agreements between the Railway and the Brotherhoods providing for mandatory retirement at age 65. Earlier, in April 1960, what was then the Lehigh *Railroad* merged with the defendant, Lehigh *Railway,* resulting in a decrease in the necessary work force. In January of 1962, the Brotherhood Locals and the Railway entered into the mandatory retirement agreements.

Plaintiffs allege that under a prior collective bargaining contract, the 1936 Washington Job Protection Agreement entered into by numerous unions and rail carriers, including the defendant Brotherhoods and the defendant Railway's predecessor, the Railway has a duty to grant severance pay to employees whose jobs are abolished as a result of that merger. It is asserted that the retirement agreements are a deliberate attempt by the Railway, joined in by the Brotherhoods, to avoid the necessity of these severance payments. It is further alleged that the retirement agreements amount to unauthorized alterations of the Washington Job Protection Agreement. Finally, plaintiffs charge that the manner in which the Brotherhoods entered the agreements, the grievance procedures under the agreements, and the provisions for compulsory retirement at age 65, amount to discrimination.

All defendants have moved to dismiss the complaint and have asserted in their briefs and arguments that the complaint fails to state a claim for which relief can be granted, that it does not properly allege a class action and that the Court lacks jurisdiction.

The crux of the jurisdictional objection is that Congress has granted to the National Railroad Adjustment Board all power over disputes growing out of grievances or out of the interpretation or application of collective bargaining agreements. In pertinent part, the Railway Labor Act provides:

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." 45 U.S.C.A. § 153 First (h) Fourth division, (i).

While the statute might appear to be phrased permissively, the Supreme Court, in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), has determined that this section grants the Board exclusive primary jurisdiction over disputes between employees and carriers as to the interpretation of collective bargaining agreements. The Court feels that this is just such a dispute.

Plaintiffs have asserted a myriad of charges of discrimination and illegal action against both the Brotherhoods and the Railway, the solutions of which, in all instances, require initial determination of the substantive meaning of the involved contracts. Plaintiffs lay claim to certain rights under the Washington Job Protection Agreement, and assert that the defendants, by entering into the retirement agreements, have discriminatorily denied these rights without justification. Thus, this claim depends essentially upon the meaning of the various agreements, and more important, the effect of each upon the others. This is precisely the style of interpretive functions with which the Board has been charged.

The instant case differs from Felter v. Southern Pacific Co., 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959) in which the validity of a dues checkoff agreement was properly decided by a District Court and not by the Board. In that case, there was no question of interpretation but only one of validity. The Court stated at page 327, footnote 3, at page 850 of 79 S.Ct.:

"Since there was no question of interpretation or application of the collective agreement, but rather only one of its validity under the statute, the case is not one in which resort to the grievance and Adjustment Board machinery provided by the Railway Labor Act was required. 'This dispute involves the validity of the contract, not its meaning.' Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 774, 72 S.Ct. 1022, 96 L.Ed. 1283."

At this point, however, it is necessary to recognize and confront the distinction between the claim against the Railway and that asserted against the Brotherhood Locals. The before-quoted section of the Railway Labor Act speaks explicitly in granting jurisdiction in disputes between employees and carriers but is silent as to those between employees and their statutory representatives.

■ This uncertain situation is further complicated by the line of cases allowing the Courts to hear discrimination claims asserted by railroad employees against their unions. E. g. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The theory behind allowing such actions has been essentially this: The RLA imposes a duty upon the union to represent the minority as well as the majority. In performing this duty, the representative is not barred from making contracts which may have unfavorable effects on some members, but is barred from any discrimination of an irrelevant or invidious nature. Such discrimination is a violation of the union's statutory duty to represent and a violation of the employees' rights to be represented. Thus, the violation of a federal right is implied from the statute and its policy. The cases, therefore, arise under a law regulating commerce and are within the jurisdiction of the Federal Courts. Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, supra, 323 U.S. at 213, 65 S.Ct. 235.

While most of these cases have involved racial discrimination, over which the expertise of the Board does not necessarily extend, this possible distinction is not relied upon here. A search of these cases, however, reveals none which turn so essentially upon the interpretations of collective bargaining agreements as does the case at bar. As detailed before, a decision as to possible discrimination by the Locals or the Railway cannot be reached until after the meaning and effect of these agreements are ascertained.

■ The claims asserted here against the carrier and the Brotherhoods arise out of agreements collectively bargained under the authority and direction of the Railway Labor Act. It is axiomatic that a primary purpose of this and similar legislation is the promotion of a mutually advantageous labor-management climate, one of fairness, harmony, and a necessary degree of predictability. Multiple interpretations of the same agreements, perhaps in direct opposition to each other, are certainly not directed toward these interests, but would rather defeat them. Pennsylvania Railroad Co. v. Day, 360 U.S. 548, 551–552, 79 S.Ct. 1322, 3 L.Ed. 2d 1422 (1959). As to all the defendants, the nature of the problem and the need for experience and expert knowledge remain the same. The same agreements must be interpreted in a uniform manner to reach an orderly adjustment of the differences.

It is clear from the foregoing that the complaint has failed in its attempt to allege a cause of action cognizable in this Court. With respect to the defendant Brotherhoods, paragraphs 11, 12, 13, 14 and 15 of the complaint allege, in essence, that the carrier, in the spring of 1960, attempted to revise the then existing collective bargaining agreements with the Brotherhoods to provide for compulsory retirement at age 65 without severance pay. This proposal was rejected by vote of the Brotherhood Locals. In November of 1961, approximately 30 men were served with severance pay. Thereafter the proposition was revived and by majority vote of the Locals, compulsory retirement was provided for at 65 without severance vote. The complaint alleges that younger members, by their affirmative votes, made the difference. There is no allegation in the complaint that there was any fraud, duress or coercion on the part of the carrier or the Brotherhoods in the negotiation and signing of this agreement, since it was done by a clear majority vote of the members of the organizations involved. The gravamen of the complaint is that the two named plaintiffs and other members to be retired in the future have been deprived of some rights which relate back to the Washington Job Protection Agreement. This immediately leads us back to the problem first discussed—the effect of negotiated railway labor agreements.

As before stated, any rights which plaintiffs may have would appear to arise out of the interpretation of the Washington Job Protection Agreement in conjunction with the presently effective negotiated bargaining agreements. Since Congress has proscribed the review of and interpretation of these agreements by the Courts, it is clear that the Court is without power to act in the premises, particularly since there is no attack on the fundamental validity of the agreements. Felter v. Southern Pacific Co., supra. The motions to dismiss will therefore be allowed.