**Ira CLEMENS (individually and on behalf of others adversely affected)**

**v.**

**CENTRAL RAILROAD COMPANY OF NEW JERSEY, Lehigh and New England Railway Company and Lehigh and New England Railroad Company, Appellants.**

**No. 16514.**

United States Court of Appeals
Third Circuit.

Argued Feb. 6, 1968.

Decided Aug. 9, 1968.

As Amended Sept. 20, 1968.
Rehearing Denied Oct. 4, 1968.

Certiorari Denied Jan. 13, 1969.

See 89 S.Ct. 633.

Miles W. Kirkpatrick, Morgan, Lewis & Bockius, Philadelphia, Pa. (Warren M. Laddon, Philadelphia, Pa., on the brief), for appellant.

Lawrence J. Richette, Frater, Green & Levy, Philadelphia, Pa., for appellee.

OPINION OF THE COURT

Before HASTIE, Chief Judge, and FREEDMAN and VAN DUSEN, Circuit Judges.

HASTIE, Chief Judge.

As originally filed, the complaint in this suit by involuntarily retired employees of a railroad sought "an injunction, mandatory in nature" to compel the railroad "to abide by the Order and Certificate of the Interstate Commerce Commission providing for severance pay in accord with the New Orleans case." Subsequently, an amendment to the complaint supplemented the prayer for relief by asking "in the alternative" that the court issue a mandatory injunction requiring the parties to arbitrate their dispute.

The complaint alleges that since January, 1962, the plaintiff and other employees, constituting a class, have been illegally subjected by the railroad to forced retirement at age 65 without severance pay,[1] pursuant to a wrongful and invalid collective bargaining contract between the railroad and the railroad brotherhoods, purporting to act as representatives of the employees.[2] The contract is said to be invalid because it undertakes to deprive the plaintiffs of benefits guaranteed to them by a decision of the Interstate Commerce Commission, Finance Docket No. 21155, Sept. 26, 1961, authorizing the railroad to abandon certain trackage subject to the conditions of the so-called New Orleans Union Passenger Terminal case which incorporated certain provisions of the Washington Job Protection Agreement providing severance pay for employees who should lose their jobs as a result of a permitted abandonment of railroad facilities. As stated above, the complaint asks that the railroad be ordered to make severance payments or to arbitrate the dispute.

A defense motion for summary judgment on the basis of res judicata was denied and the court ultimately ordered the parties to submit their dispute to arbitration. In reaching this result, the court decided that the contract between the railroad and the brotherhoods was invalid insofar as it abrogated any rights to severance pay derived from the employee protective provisions of the 1961 decision of the Interstate Commerce Commission.

On appeal one of the railroad's contentions is that this court and the district court have held in an earlier lawsuit between the same employees and the railroad that the involuntary retirement provisions of the contract between the railroad and the brotherhoods are binding on the plaintiffs and, therefore, that this issue cannot properly be reexamined or the earlier ruling reversed in this action.

We have examined the earlier case, Roberts v. Lehigh & New England Ry., 3d Cir. 1963, 323 F.2d 219, affirming, E.D.Pa.1962, 211 F.Supp. 379. There is no significant difference between the parties in that suit and the parties here. The plaintiffs complained of exactly the same wrong, their involuntary retirement without severance pay pursuant to the contract between the railroad and the brotherhoods. However, in the *Roberts* case they sought a different remedy, namely, a declaratory judgment that their enforced retirement was invalid and an award of punitive damages measured by the severance pay they would have received but for the allegedly illegal contract. It is also contended now that the two cases are significantly different because in the first case the contract imposing retirement was attacked as a violation of the Railway Labor Act while it is the theory of the present case that the contract contravened the 1961 Interstate Commerce

---

**1.** This controversy concerns severance pay only, not pensions or any other normal retirement benefits to which employees may be entitled.

**2.** Throughout this case the assumption of the parties and the court has been that the 1962 labor contract is properly interpreted as denying severance pay to retiring workers. It was held in Roberts v. Lehigh & New England Ry., 3d Cir. 1963, 323 F.2d 219, that any dispute as to the correctness of this interpretation is within the exclusive jurisdiction of the Railway Adjustment Board. Similarly, in this case we do not rule upon the correctness of the interpretation.

Commission decision and, therefore, violated the Interstate Commerce Act.[3]

However, we think these contentions unduly shorten the reach of res judicata. The *Roberts* case decided that the contract between the railroad and the brotherhood was valid and binding upon the present plaintiffs. They cannot now obtain a reconsideration of that ruling even on a ground not heretofore urged. When the *Roberts* case was here on appeal, point III of the plaintiffs' brief was entitled: "The Issue is the Illegality of the January 1962 Agreements, not the Meaning of those Agreements and the 'Washington Job Protection Agreement'." Under this heading they argued that but for the bar of the January 1962 contract they would assert their rights under the Washington Agreement in an appropriate administrative proceeding. Addressing itself to that issue this court concluded that rights given by the Washington Job Protection Agreement, as allegedly extended to the plaintiffs by the 1961 decision of the Interstate Commerce Commission, could be changed by a contract entered into by an authorized collective bargaining agent acting in good faith and without "hostile discrimination" against any of those it represented, and that no bad faith or hostile discrimination had been established.

Now in a second case the plaintiffs are again seeking a decision that the 1962 contract cannot abrogate severance rights created by the Washington Job Protection Agreement as incorporated in the 1961 Interstate Commerce Commission decision. This is the same controversy that was before us in the *Roberts* case.[4] The only allegedly new matter is the citation of a provision of the Interstate Commerce Act requiring that appropriate economic protection be afforded displaced workers, rather than the guarantees of the Railway Labor Act, as the statutory basis of the claim, common and essential to both suits, that the 1962 contract could not lawfully deprive workers of benefits given them by the 1961 decision of the Commission. We hold that this difference is insufficient to avoid the bar of res judicata.

In Williamson v. Columbia Gas & Electric Corp., 3d Cir. 1950, 186 F.2d 464, one of the issues before this court was whether res judicata applied when successive civil antitrust suits sought damages for the same acts, alleged in the first suit to violate the Sherman Act and in the second to violate the Clayton Act. In holding that a decision denying the first claim barred the second, this court ruled "that the fact that different statutes are relied on does not render the claims different 'causes of action' for purposes of res judicata." 186 F.2d at 468. True, as the court below pointed out in the present case, there was also in the *Williamson* case a separate consideration that both suits were barred by the same statute of limitations. But we considered and ruled upon the different statutory bases of the suits quite apart from and independently of the statute of limitations question. In these circumstances, we view our above quoted *Williamson* ruling as authoritative and applicable here. We add that the *Williamson* ruling was predicated upon authoritative Supreme Court decisions. E. g.,

3. Section 5(2) (f) of the Interstate Commerce Act provides that in approving any such transaction as was sanctioned by its 1961 decision the Interstate Commerce Commission "shall require a fair and equitable arrangement to protect the interests of the railroad employees affected." 49 U.S.C. § 5(2) (f).

4. The court below found that "the decision in *Roberts* was based on the Court's lack of jurisdiction under the Railway Labor Act, and its finding * * * that primary jurisdiction lay elsewhere. That decision was not on the merits." Consequently the district court held that the doctrine of res judicata should not apply in this case. This approach overlooks the fact that in *Roberts* we passed on the merits of the issue of the legality of the 1962 contract, which was before us for substantive determination, before reaching the question whether any additional question about the "interpretation" of the contract should be left to administrative decision.

Grubb v. Public Utilities Comm., 1930, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972. See also United States v. Moser, 1924, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262; Independent Petroleum Workers v. American Oil Co., 7th Cir. 1963, 324 F. 2d 903.

Finally, the plaintiffs' effort to escape the bar of res judicata is not aided by pointing out that in the first case they sought reinstatement and punitive damages in the amount of the severance pay, while now they are accepting their discharge as final and are seeking arbitration. In any event, the ultimate relief which the plaintiffs are now seeking through arbitration is severance pay and the equivalent was requested in the first case.

The judgment will be reversed and the cause remanded for the entry of summary judgment for the defendants on the ground of res judicata.