Reno ANTONIOLI and Albert Gist, individually and on behalf of others adversely affected, Appellants in No. 71–1257, and the South Jersey Texas Employees Association

v.

LEHIGH COAL AND NAVIGATION COMPANY et al.

Appeal of the SOUTH JERSEY TEXAS EMPLOYEES ASSOCIATION, in No. 71–1258.

Nos. 71–1257, 71–1258.

United States Court of Appeals, Third Circuit.

Argued Sept. 24, 1971.

Decided Nov. 30, 1971.

As Amended Dec. 17, 1971.

Rehearing Denied Jan. 7, 1972.

———◆———

Lawrence J. Richette, Philadelphia, Pa., for appellants.

Warren M. Laddon, Morgan, Lewis & Bockius, Philadelphia, Pa., for Lehigh & New England Railway, and The Central Railroad Co. of N. J.

Matthew J. Broderick, Dechert, Price & Rhoads, Philadelphia, Pa., for Lehigh

Coal & Navigation Co. and Lehigh & New England Railroad.

Before VAN DUSEN, ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case is before the court on appeal from a district court order of December 30, 1970, granting summary judgment for defendants on Counts I and II of the complaint and dismissing Count III, without prejudice, for lack of standing to sue, after both plaintiffs and defendants had filed motions for summary judgment.

On September 26, 1961, the Interstate Commerce Commission, pursuant to 49 U.S.C. § 5(2), approved the abandonment of all but 40 miles of the track of the Lehigh and New England Railroad (Railroad) and the sale of the remaining 40 miles to the Lehigh and New England Railway (Railway).[1] In order to meet its statutory duty under 49 U.S.C. § 5(2)(f) to "require a fair and equitable arrangement to protect the interests of all the railroad employees affected," the ICC prescribed the labor protection conditions set out in New Orleans Union Passenger Terminal, 282 I.C.C. 271 (1952).[2] This appeal is from a district court order denying the claims of former employees of Railroad to allowances for furloughs and dismissals resulting from the abandonment and merger based on alleged

non-compliance with the ICC protective order.

The complaint is set out in three counts and seeks a mandatory injunction to compel arbitration of the disputes.[3]

### Count I

Plaintiffs in Count I seek compulsory arbitration of their claims for displacement and severance benefits under the ICC protective order. The district court opinion of December 30, 1970, granting summary judgment on Count I, held that plaintiffs in Count I consisted of the workers of Railroad who were furloughed prior to the effective date of the consolidation. These furloughs allegedly occurred as the result of a plan to divert the traffic of Railroad in order to give the impression that Railroad was losing business as a result of general economic conditions, rather than as a result of the impending consolidation. On this appeal, plaintiffs have maintained that the closing date for determining membership in Count I is the effective date of the merger. They contend that Count I includes all those employees who were on the payroll of Railroad at the time of the merger and received less than the full benefits mandated by the ICC protective order.[4] An analysis of the record which was before the district court at the time it ruled on the summary judgment motions indicates that the closing date for determining membership in Count I was January 1959,[5] and that the composition of Count

1. The ICC order of September 26, 1961, became effective on October 31, 1961.

2. The basis for the *New Orleans* decision is the Washington Job Protection Agreement, which was a collective bargaining agreement entered into by most major railroads and unions in 1936 to prescribe standards of protection for employees affected by consolidation. The *New Orleans* decision includes the provisions of the Oklahoma Ry. Co. Trustee Abandonment, 257 I.C.C. 177 (1944), which was designed to supplement the earlier Washington Agreement.

3. Counts I and II seek arbitration under paragraph 8 of the *Oklahoma* case. Count III was added as an amendment to the original complaint and seeks the convo-

cation of a special Board of Adjustment under § 3 of the Railway Labor Act, 45 U.S.C.A. § 153 (as amended June 20, 1966, P.L. 89–456), appearing in 1971 cumulative pocket part.

4. Counsel for plaintiffs, in a letter of October 5, 1971, to this court stated:

"Count I consists of 528 people on the payroll of the carrier at the time of the merger * * *."

Similar assertions were made by such counsel at oral argument.

5. Plaintiffs' complaint included a broad averment of the composition of Count I as including all the employees of Railroad who were listed on the January 1952 payroll. Paragraphs 1, 14 (23a, 26a). In response to defendants' interrogatories

I was narrowed to include only those employees on the January 1959 payroll who were furloughed prior to the effective date of the merger. Plaintiffs' sole theory of relief for Count I is that employees were furloughed in anticipation of and prior to the consolidation.[6] In the district court order of December 30, 1970, leave was granted to amend the complaint within 30 days to clarify the class of plaintiffs in Count I. Plaintiffs failed to file a timely amendment to the complaint.[7]

The district court found that as a matter of law all of plaintiffs' claims in Count I were barred by the statute of limitations and the doctrine of laches in view of the six-year limitation period established by Pennsylvania law.[8] The alleged wrongs in this Count, the furloughing of employees in anticipation of the consolidation, all must have occurred prior to the effective date of the consolidation, November 1, 1961. The instant action was not filed until November 4, 1968, and is thus barred by the six-year limitation period.

Plaintiffs argue that the rights of the affected workers are vested rights of a continuous nature and thus not barred by the statute of limitations. The analysis of the four-year protective period as creating a vested right to compensation which continues until such period terminates is rejected. It is clear from the face of the statute that the congressional mandate is to provide a four-year job protection period and not to create a vested right to compensation.[9] The protective order issued by the ICC as a condition

---

seeking clarification of the composition of Count I, plaintiffs changed the date for determining membership in the class so that it included only those employees whose names appeared on Railroad's January 1959 payroll. These answers also excluded the 22 members of Count II and the 30 members of Count III.

6. Paragraph 12 of the complaint alleges that beginning in the spring of 1958 defendants began to divert traffic to other lines, thus reducing volume and causing the furloughing of many employees. Paragraph 15 then alleges that:
"Specifically the workers in this Count complain that they lost their employment, not because of normal attrition—normal loss of business—but because of a scheme by 'Central' and 'Coal Company' to create the appearance of loss of business. * * * "
The absence of any additional theories of recovery from the record thus further limits the plaintiffs' class to those employees on the January 1959 payroll who were furloughed due to the alleged diversion of traffic. Plaintiffs relied on a definition of the Count I class as including only employees furloughed in anticipation of the November 1, 1961, merger in their "Brief in Support of Summary Judgment Ordering the Parties to Arbitrate the Dispute," as follows (see p. 10):
"The dispute in [Count] I * * * [is] simply that some workers were furloughed in anticipation of the transaction approved by the ICC and hence

deprived of displacement compensation, (Count I) * * * ."

7. Plaintiffs filed an amended complaint on February 25, 1971. Viewing the time limitations for the filing of such amendment in the light most favorable to the plaintiffs, their amendment to Count I was properly denied as being untimely by Judge Fullam's order of March 2, 1971. Even assuming that the 30-day period did not begin to run until the denial of plaintiffs' motion for reargument of January 8, 1971, and allowing three days for mailing under Fed.R.Civ.P. 6(e), the time would expire on February 17, 1971.

8. 12 P.S. § 31. In cases such as the instant appeal, where the federal statute on which a cause of action is based is silent as to a limitation period, courts have uniformly applied the statute of limitations of the forum state. International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Falsetti v. Local Union No. 2026, U.M.W., 355 F.2d 658, 661 (3d Cir. 1966).

9. "In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment * * * ." 49 U.S.C. § 5(2) (f).

of the merger imposed a duty on the Railroad to insure that employees would not be adversely affected by the merger and provided a scale of compensation for violations of that duty. There is no vested right to compensation as plaintiffs allege, but rather a right to protection from changes in employment status resulting from the merger.

The time of the accrual of the cause of action [10] is a federal question to be determined by reference to federal law.[11] The cause of action in the instant case accrued on the alleged date that the duty was breached, which was the date of the furloughs.[12]

### Count II

Plaintiffs in Count II are 22 former employees of Railroad who retired at the time of the consolidation. In October of 1961 the president of Railway notified his employees of the pending consolidation and offered to pay lump sum severance benefits to any man over the age of 65 who would voluntarily retire. The 22 plaintiffs in this Count signed retirement agreements and, later, releases. Both of these documents stated that the employees waived all rights under the ICC order of September 26, 1961. The dis-

trict court, in granting defendants' motion for summary judgment, held that by signing these documents plaintiffs had waived any rights to compensation under the ICC order and that their claims were barred by the statute of limitations.

Plaintiffs' claim is barred by the applicable Pennsylvania six-year statute of limitations, 12 P.S. § 31. The cause of action for compensation under the ICC order accrued upon severance in 1961 and this action was not filed until 1968. Plaintiffs assert that the statute of limitations should not have begun to run in 1961 because they had no knowledge of their rights under the ICC order. The releases and notices of retirement were entered in the record and are cognizable on a motion for summary judgment.[13] The record does not show the invalidity of these documents and does not establish a lack of knowledge by plaintiffs' class of right under the ICC order. The validity of these documents as evidencing a knowing and intelligent waiver of rights is established by this record.[14] Therefore, plaintiffs' claim must fall on the additional ground of the existence of a valid waiver of the asserted rights.[15]

10. Plaintiffs contend that the right to sue does not commence until the obligation terminates, in this case October 31, 1965. Appellants' supplemental brief at 4.

11. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941); Vanderboom v. Sexton, 422 F.2d 1233, 1240 (8th Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); Annot. 90 A.L.R. 2d 265 (1963).

12. See Falsetti v. Local Union No. 2026, U.M.W., 355 F.2d 658 (3d Cir. 1966); Gainey v. Brotherhood of Railway & Steamship Clerks, etc., 275 F.Supp. 292, 307 (E.D.Pa.1967), aff'd, 406 F.2d 744 (3d Cir. 1968), cert. denied, 394 U.S. 998, 89 S.Ct. 1590, 22 L.Ed.2d 775 (1969); cf. Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). It is noted that § 12 of the Washington Job Protection Agreement provides: " * * * this agreement shall apply to such an employee *as of the date*

*when he is so affected*" (emphasis supplied).

13. Fed.R.Civ.P. 56(c).

14. See Fed.R.Civ.P. 56(c); Tripoli Co. v. Wella Corp., 425 F.2d 932, 935 (3d Cir. 1970). At oral argument, counsel for plaintiffs stated that he had filed no supporting affidavits on those issues and was relying on his pleadings.

15. Plaintiffs were waiving an essentially contractual right and had the burden of proving the ineffectiveness of the waiver. "One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake upon which both parties acted." Callen v. Pennsylvania R.R. Co., 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948). Plaintiffs were competent to make such a waiver. Their reliance on Nemitz v. Norfolk and Western Ry. Co., 436 F.2d 841 (6th Cir.), aff'd as cited in footnote

### Count III

■ A collective bargaining agreement providing for compulsory retirement at age 65 was entered into in January of 1962 by Railway and the three local unions which represented its employees.[16] Plaintiffs in Count III are the 30 employees who were forcibly retired pursuant to these agreements. Their complaint is that they were deprived of severance pay benefits[17] under the ICC protective order and they seek the convocation of a Special Board of Adjustment, as provided for in the 1966 amendments to § 3 of the Railway Labor Act, 45 U.S.C. § 153, to arbitrate this severance pay dispute. The claim for severance pay is based specifically on § 7(a) of the Washington Job Protection Agreement, which provides for the payment of a "coordination allowance" to an employee who is "deprived of employment" as the result of a coordination.[18] In order for plaintiffs to prevail on this claim, it is necessary for them to prove that the compulsory retirement agreement was invalid or illegal.[19] In light of the prior decisions in Roberts v. Lehigh & New England Railway Co., 211 F.Supp. 379 (E.D.Pa. 1962), aff'd, 323 F.2d 219 (3d Cir. 1963), and Clemens v. Central Railroad Co. of New Jersey, 399 F.2d 825 (3d Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969), such an attack on the validity of the retirement agreement is barred by the principles of res judicata and the doctrine of the law of the case.[20]

■■ Res judicata makes conclusive a final, valid judgment; and if the judgment is on the merits, precludes further litigation of the same cause of action by the parties or their privies.[21]

25, *infra,* for the proposition that the protected individual cannot waive his rights to compensation under 49 U.S.C. § 5(2) (f) is without merit. While *Nemitz* does hold that a union may not abrogate these rights, an individual is not powerless to waive his rights in return for a valid consideration. Callen v. Pennsylvania R.R. Co., *supra; cf.* Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937).

16. The agreement was contained in three separate memoranda of agreement entered into by the parties. Exhibits III–A(1), (2), (3) to plaintiffs' amended complaint adding Count III.

17. This controversy concerns claims for severance compensation only and not claims to pensions or other retirement benefits.

18. The origin of plaintiffs' alleged right to severance pay is the above-mentioned ICC protective order which incorporated the Washington Job Protection Agreement. Plaintiffs' answer to defendants' interrogatory 9 indicates that the basis of their claims for relief was the Washington Job Protection Agreement.

19. § 7(d) of the Washington Job Protection Agreement provides that an employee is not regarded as being "deprived of employment" in case of his "retirement on pension or on account of age or disability in accordance with the current rules and practices applicable to employees gener-

ally." Plaintiffs were retired pursuant to the collective bargaining agreement which constituted the "current rules * * applicable to employees generally." They were thus not "deprived of employment" and were excluded from the provisions of § 7(a). In order to show that they were "deprived of employment," plaintiffs must show that their retirement was somehow invalid under § 7(d). This would entail an attack on the validity of the retirement agreement.

20. We have concluded that the defendants' motion for summary judgment should have been granted as to this Count. We do not reach the question of the standing to sue which was the ground for dismissal by the district court. In response to a question from the Bench at oral argument, counsel for plaintiffs asserted that they were abandoning all claims that the South Jersey Texas Employees Association was a proper party and were relying exclusively on their claim that the *Clemens* case should be overruled. They contend that they may attack the validity of the retirement agreements free from any claim of res judicata, irrespective of the Association's standing to sue.

21. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1947); Freedman v. American Export Isbrandtsen Lines, Inc., 451 F.2d 157 (3d Cir., Opinion filed Nov. 9, 1971); 1B Moore's Federal Practice ¶ 0.401; Restatement of the Law of Judgments, §§ 1, 41, 47, 83.

In the *Roberts* case there was substantial identity of the parties with those in the instant action.[22] There is no question that the *Roberts* judgment was final and valid but plaintiffs assert that it was not rendered on the merits and does not involve the same cause of action.

This court in *Clemens* decided both of these issues adversely to plaintiffs. The court found that in both actions *(Clemens* and *Roberts)* the same parties had complained of substantially the same wrong: their involuntary retirement without severance pay pursuant to the contract between the railroad and the Brotherhoods. In the *Clemens* case plaintiffs sought a mandatory injunction compelling arbitration and based their complaint on a violation of the ICC protective order issued pursuant to 49 U.S.C. § 5(2) (f). In the *Roberts* case the relief sought was a declaratory judgment that the forced retirement was invalid and a violation of the Railway Labor Act, 45 U.S.C. § 153, was alleged. *Clemens* held that to allow the differences between *Roberts* and *Clemens* to constitute a separate cause of action would "unduly shorten the reach of res judicata." [23] The court relied on its prior decision in Williamson v. Columbia Gas & Electric Corp., 186 F.2d 464 (1950), for the proposition that "the fact that different statutes are relied on does not render the claims different 'causes of action' for purposes of res judicata." 186 F.2d at 468. We agree with the court's reasoning in *Clemens*

and find it persuasive when applied to the facts of this appeal. Here the same wrong is once again alleged by the same parties but a new form of relief, the convocation of a Special Board of Adjustment, is sought. This is clearly the same cause of action as that ruled on in the former *Roberts* decision.

Also, this court's decision in *Clemens* held that the decision in *Roberts* was rendered on the merits. The court in *Clemens* noted that the district court had refused to apply the doctrine of res judicata because of a finding that the decision in *Roberts* was based on a lack of jurisdiction under the Railway Labor Act and thus not a decision on the merits. In rejecting this position the court stated:

"This approach overlooks the fact that in *Roberts* we passed on the merits of the issue of the legality of the 1962 contract, which was before us for substantive determination, before reaching the question whether any additional question about the 'interpretation' of the contract should be left to administrative determination." 399 F. 2d at 827.

An examination of the *Roberts* opinion indicates that the court was careful to limit its ruling that it lacked jurisdiction only to questions involving the interpretation of the agreement and not to those involving its validity.[24] The court then went on to reject each of plaintiff's asserted grounds for determining the agreements to be invalid and held that the agreements were valid.[25]

---

22. Although the named parties are different, both suits were class actions on behalf of all employees forcibly retired under the above-mentioned retirement agreement.

23. 399 F.2d at 827.

24. "A Federal district court has jurisdiction to determine the validity of a contract under the guarantees of the Act. On the other hand, if the resolution of the differences between railroad employees, on one side, and the railroad and the unions, on the other, depends on the interpreta-

tion of the disputed terms of the collective bargaining agreement, then the dispute must be sent to the National Railway Adjustment Board, which has exclusive primary jurisdiction to make the interpretation." 323 F.2d at 222.

25. Among the alleged grounds of invalidity rejected by the *Roberts* court was the argument that the retirement agreements circumvented the provisions of the Washington Job Protection Agreement and were thus invalid under the Railway

■ Accordingly, we conclude that plaintiffs are barred from asserting the invalidity of the retirement agreements by the doctrine of res judicata. Even if we were to accept plaintiffs' allegations that res judicata is not proper in this case, we would be bound under the doctrine of the law of the case by the court's prior decision in *Clemens*. As stated by the late Judge Jones for this court,

"The former decision of this court became the law of the case and, once the law of a case is settled by an appellate court, it is settled for that tribunal as well as for the trial court, save for new or different facts. * * * A second appeal may not be used to raise questions in the same case already put at rest by the same court upon a prior appeal." [26]

For the reasons stated above, the December 30, 1970, district court order will be affirmed insofar as it granted summary judgment for defendants on Counts I and II (paragraphs 3 and 4), but will be amended to enter judgment for defendants on Count III (paragraph 5).

Labor Act, 323 F.2d at 219. In *Clemens* the court held that the theory that the retirement agreements abrogated rights guaranteed by the ICC protective order and thus violated § 5(2) (f) of the Interstate Commerce Act, 49 U.S.C. § 5(2) (f), was barred by res judicata. The court reasoned that the claim under the ICC Act was basically the same cause of action as that asserted under the Railway Labor Act. See note 23, *supra*, and accompanying text. The Sixth Circuit Court of Appeals in Nemitz v. Norfolk and Western Ry. Co., 436 F.2d 841, aff'd 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (Opinion of Nov. 15, 1971), stated that:

"An agreement made pursuant to the last sentence of Sec. 5(2) (f) may vary the protection afforded by the I.C.C. order, but it may not substantially abrogate employees' rights grounded in an I.C.C. order." 436 F.2d at 848.

In the instant appeal, we need not consider whether the questioned retirement agreements (see *Roberts*, 211 F.Supp. 383 and 323 F.2d 222–223) "substantially abrogate" the rights of the affected employees by preventing their receipt of severance pay contemplated by the Washington Job Protection Agreement, since we are bound by the decisions in *Roberts* and *Clemens* under the doctrines of res judicata and the law of the case. See note 26 infra.

26. A. S. Kreider Co. v. United States, 117 F.2d 133, 135 (3d Cir. 1940), rev'd on other grounds, 313 U.S. 443, 61 S.Ct. 1007, 85 L.Ed. 1447 (1941). See Trice v. Commercial Union Assurance Co., 397 F.2d 889 (6th Cir. 1968) ; Hildreth v. Union News Co., 315 F.2d 548, 550 (6th Cir.), cert. denied, 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963) ; General American Life Ins. Co. v. Anderson, 156 F.2d 615, 619 (6th Cir. 1946) ; Annotation, 87 A.L.R.2d 270 (1963) ; 1A Moore, Federal Practice, ¶ 0.404 [2] (1961).