**William C. ROBERTS and John M. Strunk**

v.

**UNITED TRANSPORTATION UNION et al.**

**Civ. A. No. 72-789.**

United States District Court, E. D. Pennsylvania.

Oct. 26, 1973.

Lawrence J. Richette, Philadelphia, Pa., for plaintiffs.

Matthew J. Broderick, Philadelphia, Pa., for Lehigh Coal and Navigation Co., and Lehigh & N.E. R.R.

Warren M. Laddon, Philadelphia, Pa., for Lehigh & New England R.R.

Carl J. Melone, Philadelphia, Pa., for National R.R. Adjustment Bd.

OPINION AND ORDER

BRODERICK, District Judge.

This matter is presently before the Court on plaintiffs' and defendants' cross-motions for summary judgment.

On June 2, 1960, defendants, Lehigh and New England Railroad Company and the Central Railroad Company of New Jersey, Central Railroad Company of Pennsylvania, and Lehigh and New

England Railway, entered into and were the signatories to an agreement which, *inter alia*, concerned the sale and purchase of certain railroad lines and appurtenances for the sum of $4,050,000. On September 26, 1961, the Interstate Commerce Commission approved the abandonment by the Lehigh and New England Railroad of its trackage except for some forty miles, the acquisition of which by Lehigh and New England Railway was concurrently approved. In approving the applications, the Interstate Commerce Commission prescribed the so-called "New Orleans" conditions (derived from New Orleans Union Passenger Terminal, 282 I.C.C. 271 (1952)) which prescribe the payment of severance pay to employees affected by an abandonment.

In January 1962 the Brotherhood of Railroad Trainmen, the Order of Railway Conductors and Brakeman, and the Brotherhood of Locomotive Firemen and Enginemen, of which the plaintiffs herein were then members, entered into collective bargaining agreements with Lehigh and New England Railway providing for compulsory retirement at age 65. Retirements pursuant to the agreements began on June 30, 1962, and plaintiffs William Roberts and John Strunk were retired on that date.[1]

Plaintiffs now seek to have this Court enter an Order directing the National Railroad Adjustment Board ("NRAB") to appoint a Referee to determine the propriety of the collective bargaining agreements hereinabove mentioned and plaintiffs' mandated retirement thereunder, and directing the defendants to refrain from participating in the selection of the Referee by the NRAB.

■ This is the fifth in a series of cases commenced by the same class of plaintiffs and arising out of the abandonment of all but 40 miles of the track of the Lehigh and New England Railroad and the sale of the remaining 40 miles to the Lehigh and New England Railway. In the case of Roberts v. Lehigh and New England Railway Co., 211 F.Supp. 379 (E.D.Pa.1962), aff'd, 323 F.2d 219 (3rd Cir. 1963), members of this class of plaintiffs sought a declaration that the January 1962 collective bargaining agreements were void and unenforceable. In affirming the District Court's dismissal of the action, the Court of Appeals held, *inter alia,* that the agreements were not invalid under The Railway Labor Act, 45 U.S.C.A. §§ 151 et seq.[2] However, the Court of Appeals did indicate that plaintiffs could submit their claims to the NRAB in the event that any resolution of the differences between the parties could be effected by an interpretation of disputed terms of the collective bargaining agreement.

In 1963 members of the same class of plaintiffs as in the present case instituted another suit in this District claiming severance pay under the 1936 Washington Job Protection Agreement.[3] Clemens v. Lehigh and New England Railway, Civil Action No. 34791 (E.D.Pa. filed Dec. 31, 1963). By agreement, this suit was dismissed without prejudice.

In March 1965 members of this same class of plaintiffs instituted their third suit in this District and their second action to reach the Court of Appeals. Clemens v. Central Railroad Co. of New Jersey, 399 F.2d 825 (3rd Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 633,

1. Plaintiffs have brought this suit on their own behalf and on behalf of twenty-eight other employees involuntarily retired at age 65.

2. On its face an involuntary retirement provision does not violate the Act. 323 F.2d at 222. On the other hand, a provision which is valid on its face may be held invalid in its application because of hostile discrimination on the part of the railroad or the statutory collective bargaining agent. *Id.* at 223. The

Court of Appeals did not find any such "hostile discrimination" from the facts set forth in plaintiffs' complaint.

3. In May of 1936, almost all railroads and brotherhoods entered into the Washington Job Protection Agreement whereby if an employee of a railroad was deprived of his employment by reason of the abolishment of his position as the result of the "co-ordination" of railroad facilities, he would be entitled to severance pay.

21 L.Ed.2d 567 (1969). This time the plaintiffs urged that the 1962 agreements were illegal not only because they circumvented the 1936 Washington Job Protection Agreement, but also because they were in conflict with the 1961 Order of the Interstate Commerce Commission. Plaintiffs sought a mandatory injunction to compel arbitration. The Court of Appeals found that the same parties had complained of substantially the same wrong in the *Roberts* case: their involuntary retirement without severance pay pursuant to the 1962 agreements. *Clemens*, 399 F.2d at 826. The Court of Appeals went on to hold that the plaintiffs were barred by the doctrine of *res judicata* as a result of the prior decision in *Roberts.* The Court of Appeals noted that the *Roberts* case had decided that the 1962 agreements were "valid and binding upon the present plaintiffs" and that they could not "now obtain a reconsideration of that ruling even on a ground not heretofore urged." 399 F.2d at 827.

On November 4, 1968 Reno Antonioli, a member of the same class of plaintiffs, commenced yet a fourth action. Antonioli v. Lehigh Coal and Navigation Co., 451 F.2d 1171 (3rd Cir. 1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972). Plaintiffs in *Antonioli* again complained that they were deprived of severance pay benefits and sought the convocation of a Special Board of Adjustment to arbitrate the severance pay dispute. Once again the Court of Appeals held that the *Roberts* decision barred their cause of action. The Court expressly rejected the notion that plaintiffs could avoid the preclusive effects of the *Roberts* case by simply asking for a new form of relief. *Antonioli*, 451 F.2d at 1177.

The present case represents the *fifth* time that the same class of plaintiffs have attempted to invoke the jurisdiction of this Court to complain about the same alleged wrong.

Plaintiffs apparently do not wish to present their claims to the National Railroad Advisory Board. They contend that inasmuch as the Board is comprised mainly of representatives of railroads and unions, as workers complaining about a railroad, their former employers and unions, they would not obtain a fair hearing. In the *Clemens* case plaintiffs sought a mandatory injunction requiring the parties to arbitrate their dispute. In the *Antonioli* case the convocation of a Special Board of Adjustment was requested. In the instant case it is prayed that the NRAB be ordered to appoint a Referee to hear the matter. We agree with former Chief Judge Hastie who said:

> [T]he plaintiffs' efforts to escape the bar of res judicata is not aided by pointing out that in the first case they sought reinstatement and punitive damages in the amount of severance pay, while now they are accepting their discharge as final and are seeking arbitration. *In any event the ultimate relief which the plaintiffs are now seeking through arbitration is severance pay and the equivalent was requested in the first case. Clemens*, 399 F.2d at 828. (Emphasis added)

Here the same wrong is once again alleged by the same parties as the basis for a new form of relief, the appointment of a Referee, on the ground that the NRAB as presently constituted is prejudiced. Any Referee appointed by this Court would be presented with the issue heretofore decided by our federal court system. The fact remains that the only ground alleged by the plaintiffs as the basis for their claims to relief from the NRAB is their same old claim that the agreement mandating their retirement is illegal.[4] *Antonioli*, 451 F.2d at 1176, n. 18, 19. In light of the prior decisions in *Roberts, Clemens* and *Antonioli, supra*, the attack on the validity of

---

4. The only allegations that have been submitted since 1962 in the series of five cases commenced by the class of plaintiffs represented here relate only to the validity of the 1962 agreements. Complaint, ¶¶ 24, 25. See also *Antonioli*, 451 F.2d at 1176, n. 18.

the retirement agreement is barred by the principle of *res judicata*.

Even were we to accept plaintiffs' allegations that *res judicata* is not applicable to this case, no authority has been advanced for the proposition that this Court may grant the unprecedented relief sought by plaintiffs—an order compelling the Board to appoint a Referee to hear plaintiffs' claims. Nor are we convinced that the plaintiffs would necessarily be denied their rights to due process by being required to present their case to the Board as presently constituted.

Accordingly, plaintiffs' motion for summary judgment is denied; defendants' motion for summary judgment is granted.